## AFFIDAVIT IN SUPPORT
## OF CRIMINAL COMPLAINT

I, Elvis Medina, being first duly sworn, do hereby depose and state that:

### Agent Background

1. I am a Special Agent of the United States Department of Homeland Security (DHS), Homeland Security Investigations (HSI) and have been so employed since 2016. I am currently assigned to the HSI San Juan Caribbean Corridor Strike Force (CCSF). I have completed the Criminal Investigator Training Program and Homeland Security Investigation Special Agent training course at the Federal Law Enforcement Training Center. As a Special Agent my duties and responsibilities include conducting investigations of: alleged manufacturing, distributing or possession of controlled substances (Title 21, United States Code, Sections 841 (a)(1)); conspiracy to distribute a narcotic drug controlled substances into the United States (Title 21, United States Code, Section 846); importation of controlled substances (Title 21, United States Code, Section 952(a); smuggling of goods into the United States (Title 18, United States Code, Section 545); failure to declare (31 United States Code 5316), money laundering (18 United States Code 1956), bulk cash smuggling (31 United States Code 5332), alien smuggling (8 United States Code 1324), entry without inspection (8 United States Code 1325) and related offenses. Prior to HSI, I was employed by the United States Border Patrol (USBP) as Border Patrol Agent for approximately eleven (11) years. While employed with USBP, I was assigned to the Drug Enforcement Administration as a Task Force Officer for approximately seven (7) years.

2. During my law enforcement career, I have become familiar with the trafficking of illegal drugs and its proceeds as well as drug trafficking organizations operations. As part of my official duties, I have conducted arrests of persons engaged in illegal drug activities and its proceeds, executed search warrants of homes and property of persons engaged in drug trafficking and money laundering activities, and have participated in seizures of property and currency, which

constituted proceeds of illegal drug trafficking activity. Moreover, I have interviewed persons involved in drug trafficking and money laundering and debriefed confidential sources and cooperating defendants regarding the habits and practices of people engaged in illegal trafficking of drugs and the methods utilized to launder proceeds. Through my training and experience, I have become familiar with the modus operandi of drug traffickers.

3. I have conducted and assisted in investigations into the unlawful transportation, possession, and sale and distribution of narcotics. I have conducted various complex investigations concerning the unlawful transportation, possession, and distribution of narcotics, the laundering and concealment of proceeds related to the criminal activities, the illegal use of communication facilities by narcotics smugglers in furtherance of their criminal activities and conspiracies to engage in these activities. I have experience in conducting surveillance operations, analyzing telephone records, interviewing witnesses, executing search and arrest warrants, participating in physical surveillances and other investigative techniques. The investigations in which I have participated have resulted in the arrest, prosecution and conviction of individuals who have transported, possessed, and distributed illegal narcotics, as well as the seizure of said narcotics and proceeds of the sale of those narcotics.

**Facts in Support of Probable Cause**

4. On August 26, 2018, at approximately 1930 hours, a United States Coast Guard (USCG) Air Station Miami HC-144 Ocean Sentry aircraft (CG2304) detected a suspicious vessel traveling southbound without navigation lights at approximately twenty-four (24) nautical miles (NM) northeast of Loiza, Puerto Rico. The subject vessel was described as a twenty (20) foot, single outboard engine yawl ("yola") type vessel and displayed no indicia of nationality. The USCG Aircraft crew observed four (04) persons onboard with multiple packages in the vessel.

5. A USCG vessel (CG33143) and USS ZEPHYR, under the tactical control of the USCG and with a deployed USCG law enforcement detachment, were directed to intercept the

suspect the vessel. The USCG Aircraft crew maintained continuous surveillance of the yola and vectored the two USCG vessels to the yola's location for interdiction.

6. Shortly thereafter, the USCG surface vessels approached the yola and the occupants onboard jettisoned packages from the yola, approximately 17 NM north of Loiza, Puerto Rico. The USCG surface vessels initiated the interdiction of the yola by energizing its blue lights, sirens, and utilizing verbal commands through its loudhailers, but the yola failed to obey the commands of the USCG personnel and continued on its southbound course at a high rate of speed. As a result, the USCG surface vessels deployed warning shots in attempt to stop the yola, but the operator of the yola did not stop.

7. During the pursuit, the yola collided with the CG33143, hitting the port engine and displacing some of the railing on the CG33143. Afterwards, the yola stopped and went dead in the water (DIW) at approximately eleven and one-half (11.5) NM north of Loiza, Puerto Rico. The USCG surface vessel crew seized the yola and took custody of the four (4) individuals onboard. All four (4) individuals claimed to be citizens of the Dominican Republic.

8. USCG diverted a second aircraft, a USCG MH-65 (CG6573), to the area to help locate the jettisoned packages. CG6573 vectored the USCG surface vessels to the jettisoned contraband where they recovered twenty-seven (27) individually wrapped packages. The twenty-seven (27) packages contained a white powdery substance, which subsequently tested positive for cocaine. The USCG sank the yola as a hazard to navigation.

9. The subjects and the seized evidence were brought to the Mayaguez Port of Entry in Puerto Rico by the USCG and turned over to Border Patrol custody. Thereafter, the four subjects and seized evidence were transferred to San Juan, Puerto Rico for processing and custody transfer to U.S. Department of Homeland Security agents for further investigation.

10. Upon arrival, the four (4) subjects were arrested and identified as the following: Jose RIVERA, a Dominican Republic National; Omar ENRIQUE, a Dominican Republic National;

Ernesto GONZALEZ, a Dominican Republic National; and Jose CABRERA, a Dominican Republic National. The twenty-seven (27) packages of suspected cocaine weighed 31.25 kilograms.

## Conclusion

11. Based on the facts contained herein, I believe there is probable cause to charge RIVERA, ENRIQUE, GONZALEZ and CABRERA with violating Federal Law, to wit: Title 21, United States Code, Sections 952, 960, 963 (conspiracy to import five kilograms or more of cocaine); Title 21, United States Code, Section 846 (conspiracy to possesses with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule ii controlled substance); and Title 21, United States Code, Section 841(a)(1) and 841(b)(1)(A)(ii) (possession with intent to distribute five kilograms or more of a mixture or substance containing a detectable amount of cocaine, a schedule ii controlled substance).

_____
Elvis Medina
Special Agent
Homeland Security Investigations

Sworn to and subscribed before me this 30th day of August, 2018, in San Juan, Puerto Rico.

_____
Hon. BRUCE J. McGIVERIN
United States Magistrate Judge
United States District Court
District of Puerto Rico